UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Matthew Hartz, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　Plaintiff,<br><br>　　- against -<br><br>TaxAct, Inc.,<br><br>　　　　　　　　　Defendant | 1:23-cv-04591<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

　　Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

　　1.　　TaxAct, Inc. ("Defendant") operates an online tax filing service through which Americans file their required annual tax returns with the Internal Revenue Service ("IRS").

　　2.　　To protect Americans from tax preparation companies disclosing their "private tax return information" (TRI) and other sensitive "personal identifying information" or "PII," Congress and the IRS enacted strict taxpayer privacy protections when it comes to sharing that information with third parties.[1]

　　3.　　However, a recent Congressional Report (the "Report") building upon a fall 2022 investigation by The Markup revealed Defendant had "been quietly transmitting sensitive financial information to Facebook" and Google for several years.

　　4.　　By affixing invisible tracking codes from Facebook and Google on its website,

---

[1] The Federal Trade Commission ("FTC") defines "personal identifying information" or "PII" to include "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," such as, "[n]ame, social security number, date of birth, official state or government issued driver's license or identification number, alien registration number, alien registration number, government passport number, employer or taxpayer identification number."

millions of Americans who used TaxAct to file their required annual tax returns had their TRI and PII unlawfully shared with these Big Tech giants.

I.  USE OF FACEBOOK PIXEL AND GOOGLE ANALYTICS

5.  Since no later than 2018, TaxAct's website has utilized the "Meta Pixel, a line of code inserted into [its] online tax prep software" to transmit a significantly greater amount of TRI and PII than it disclosed.

6.  This included their full names, email, country, state, city, zip codes, phone numbers, gender, date of birth, filing status, adjusted gross income (AGI), approximate refund amount, approximate federal tax owed, web browser used, year of the return, "website referral, if any, and buttons that were clicked and names of text-entry forms that the taxpayer navigated to (which could indicate, for example, whether taxpayers were eligible for certain deductions or exemptions)."

7.  The Pixel also transmitted "first names of dependents, in a modified hashed form to provide some additional privacy."

8.  According to the Report, "Meta collected indicators for whether a given taxpayer was head of household, married filing jointly, had certain assets, investment income, charitable contributions, mortgage interests, standard deductions, Schedule Cs, and student loan interest."

9.  This information went far beyond TaxAct's previous disclosures.

10. TaxAct users who were subject to these practices used its software for their annual returns, including users of its Free File service, "a public-private partnership between private tax prep companies like TaxAct and the IRS."

11. Since 2014, TaxAct used similar tracking codes called "Google Analytics," "through which Google received 'similar financial data, but not names.'"

## II. TERMS AND CONDITIONS FAIL TO DISCLOSE EXTENT OF DISTRIBUTION OF TRI

12. When taxpayers sign up for TaxAct, they are required to create a user account.

13. This involves clicking a box with "certifying that they agree to the TaxAct Terms of Service & Terms of Use, and have read and acknowledge the Privacy Statement."

14. Next, users "are taken to several pages where they can input TRI - their personal information, filing status, dependent status, and contact information."

15. This "clickwrap" or "browser wrap" "sign-up procedure does not appear to meet IRS regulations" because "at no point did the website prompt the user to sign or date a consent form for the disclosure of TRI."

16. Moreover, though Defendant's "2022 version of its Privacy Statement broadly describes the purpose of the data sharing and named Google as a recipient, it did not mention Meta at all and did not describe each particular use authorized nor specify the precise TRI that was to be disclosed to those recipients."

17. While it currently "mentions both Meta and Google, at the time TRI was found to have been disclosed in November 2022, no such mention was made," notwithstanding its failure "to meet all other IRS regulatory requirements described above."

18. TaxAct was aware of "the full functionality of the Meta Pixel, yet chose to implement it anyways" and stated their data collection "was and is permitted under the law" and that they did not feel it was necessary to inform taxpayers about its implementation on their website."

## III. VALUE OF PERSONAL INFORMATION

19. According to the FTC, "The use of third-party information from public records, information aggregators and even competitors for marketing has become a major facilitator of our retail economy."

20. The result is that an individual's personal data functions as a "new form of currency" that supports a $26 billion per year online advertising industry in the United States.

21. In fact, "Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable."

22. Recognizing the high value that individuals place on their PII, companies now offer them an opportunity to sell this information to advertisers and other third parties.[2]

23. Companies have even devised methods to quantify the value of PII on the dark web to cyber criminals.[3]

24. This gives people more power and control over the type of information that they share and who ultimately receives that information.[4]

25. Surveys show that consumers place a high value on their PII in terms of protection against improper access and unauthorized secondary use.[5]

26. Individuals were estimated to value the restriction of improper access to their data at between $11.33 and $16.58 per website and prohibiting secondary use to between $7.98 and $11.68 per website.[6]

27. People place a high value not only on their TRI and PII, but also on the privacy of that data, and pay more to do business with companies conditioned upon safeguarding their PII.[7]

---

[2] T. Soma, ET AL, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009).
[3] Risk Assessment Tool, Norton, 2010.
[4] Wall Street Journal, Web's Hot New Commodity: Privacy.
[5] New York Times, You Want My Personal Data? Reward Me for It.
[6] Hann et al., The Value of Online Information Privacy: An Empirical Investigation, Mar. 2003, at 2.
[7] Tsai, Cranor, Acquisti, and Egelman, The Effect of Online Privacy Information on Purchasing Behavior, 22(2) Information Systems Research, 254 (June 2011).

Jurisdiction and Venue

28. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

29. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

30. Plaintiff is a citizen of Illinois.

31. Defendant is a citizen of Iowa.

32. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

33. The members of the class Plaintiff seeks to represent are more than 100, because TaxAct has thousands of users in this State.

34. Venue is in this District with assignment to the Eastern Division because Plaintiff resides in Cook County and a substantial part of the events or omissions giving rise to these claims occurred in Cook County, including Plaintiff's use of TaxAct and which is where he transmitted his TRI and PII to it.

Parties

35. Plaintiff is a citizen of Cook County, Illinois.

36. Defendant TaxAct, Inc. is an Iowa corporation with a principal place of business in Iowa.

37. Plaintiff used TaxAct for numerous years to file his tax returns and only stopped within the last year or so.

38. As a condition of use, Plaintiff was required to disclose his TRI and PII.

39. Plaintiff was not informed that this would be shared with the above-identified third

parties.

40. Plaintiff was denied protections of his TRI and PII that he was owed and was entitled to receive as a customer and/or user of Defendant's services.

## Class Allegations

41. Plaintiff seeks certification of an:

> **Illinois Class:** All persons in the State of Illinois who used TaxAct from 2014 through the present.

42. Common questions of issues, law, and fact predominate and include whether Defendant's actions were and are unlawful, negligent, reckless, misleading and if Plaintiff and class members are entitled to damages.

43. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unlawful, negligent and reckless handling and exposure of their TRI and PII and the unfair, misleading, and deceptive representations, omissions, and actions.

44. Plaintiff is an adequate representative because his interests do not conflict with other members.

45. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

46. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

47. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*

48. Plaintiff incorporates by reference all preceding paragraphs.

49. Defendant's transmission of Plaintiff's TRI and PII was contrary to 815 ILCS

530/20.

50. This TRI and PII was used for a purpose unrelated to the data collection, since it was shared with Facebook and Google.

51. Defendant violated the ICFA by violating 815 ILCS 530/20.

52. Plaintiff was damaged by Defendant's violations.

## Breach of Implied Contract

53. Defendant and Plaintiff entered into contracts, written, or implied, that allowed Defendant to access his TRI and PII for the sole purpose of tax preparation and filing.

54. Defendant breached the implied contract by unlawfully disclosing Plaintiff's TRI and PII to the above-identified third parties.

55. Plaintiff would not have entrusted his TRI and PII to Defendant had he known it would be shared in the manner described or would have paid less to use its services.

56. The value of Plaintiff's TRI and PII has been reduced by its disclosure to third parties.

## Unjust Enrichment

57. Defendant obtained benefits and monies from disclosing Plaintiff's TRI and PII with third parties without adequate disclosure.

58. Plaintiff seeks restitution and disgorgement of inequitably obtained profits of Defendant because of this disclosure.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary, statutory and/or punitive damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated: July 15, 2023

Respectfully submitted,

/s/Spencer Sheehan

Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com